IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2020

## STATE OF TENNESSEE v. JIMMIE DEAN ROY

**Appeal from the Criminal Court for Hamilton County
No. 293977   Don W. Poole, Judge**

———————————————————

### No. E2019-02263-CCA-R3-CD

———————————————————

Pursuant to a plea agreement, the Defendant, Jimmie Dean Roy, pled guilty to five counts of identity theft and one count of identity theft trafficking, and he conceded that he violated the terms of his probation with respect to his prior convictions for three counts of burglary of an automobile and one count of theft of property valued over $1,000. The Defendant received an effective eight-year sentence to be served in confinement, and the trial court stayed the execution of the sentence and granted the Defendant a furlough to the drug court program. The Defendant subsequently fled the state. Following his arrest, the drug court removed him from the program, and the trial court ordered his sentences into execution. On appeal, the Defendant challenges his removal from the drug court program and argues that he was not afforded due process protections during the removal hearing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Julie Moya, Chattanooga, Tennessee, for the appellant, Jimmie Dean Roy.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and Crystle Carrion, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2015, the Defendant pled guilty to three counts of burglary of an automobile and one count of theft of property valued over $1,000. Pursuant to a plea

agreement, the Defendant received an effective sentence of eight years as a Range II, multiple offender to be served on probation. Subsequently, he was arrested and charged with multiple offenses related to identity theft, as well as with violating the terms of his probation. On August 1, 2018, the Defendant pled guilty to five counts of identify theft and one count of identity theft trafficking, and he conceded that he violated the terms of his probation with respect to his prior convictions. He received an effective sentence of eight years' incarceration to be served concurrently with his sentences resulting from his probation violation. The trial court stayed the execution of the Defendant's sentences and granted him a furlough to the drug court program.

On August 5, 2019, drug court personnel filed a notice/request that the Defendant be removed from the program. According to the pleading, the Defendant had been sanctioned and returned to custody previously for having contact with another participant of the program, who was also a co-defendant in some of the Defendant's charges, when the Defendant had been instructed that such conduct was prohibited. The pleading noted that the Defendant was released from custody on January 10, 2019, and was provided housing at Oxford House, a sober living facility. On the following day, the Defendant failed to make curfew and did not return to the facility. On Monday, January 14th, he reported to the drug court office and stated that he had been living with a friend in a tent. He failed to appear in drug court that afternoon for a status review, and a capias was issued for his arrest. He absconded from the drug court program for several months. As a result, drug court personnel requested that he be removed from the program.

A removal hearing was held in the drug court on August 12, 2019, during which the Defendant was represented by counsel. The drug court announced that the primary allegation was that the Defendant absconded from the drug court program, and defense counsel stated that the Defendant did not wish to challenge the factual allegations asserted in the notice of removal. Upon questioning by the drug court, the Defendant confirmed that he understood that he had the right to require proof of his violations of the rules of the drug court program, that he understood that he was giving up that right, and that he admitted to violating to rules of the program.

The Defendant testified to the circumstances that led to him missing his curfew at Oxford House and his absconding from the drug court program. He stated that he believed curfew was at 9:00 p.m. and that when he arrived at Oxford House at 8:40 p.m. on a Friday in January of 2019, he learned that curfew was actually at 8:00 p.m. When he arrived at the facility, the door was locked, and he knocked. The Defendant stated that a member of the facility's staff answered the door and informed him that he was being kicked out of the facility. He maintained that he attempted to contact drug court personnel but was unsuccessful. He stated that he did not have anywhere to go and stayed with an acquaintance who was homeless and had a tent set up in a wooded area.

On the following Monday, the Defendant met with drug court personnel, who believed that he was being untruthful and decided that he should go before the drug court judge. The Defendant said he "panicked" and fled to Georgia.

The Defendant testified that while in Georgia, he lived with an older couple, whom he helped with home repairs in lieu of paying rent. They introduced him to an electrician, who hired him, and the Defendant said he maintained employment while living in Georgia. The Defendant also spent weekends with his teenage daughter and testified about repairing his relationship with her. He admitted using methamphetamine and marijuana when he initially absconded but maintained that he had been sober for three or four months.

The Defendant stated that he was arrested in Georgia while trying to repair a broken taillight on his boss's vehicle in the parking lot of a fast food restaurant. He was unable to repair the taillight before dark and was afraid to leave the parking lot in the vehicle. As a result, restaurant employees called the police. The Defendant said he admitted his identity to the responding police officer and acknowledged that he had absconded from drug court.

The Defendant testified that drug court personnel did not attempt to contact him after he fled, but he acknowledged that he never attempted to contact them either. He explained that he fled because he knew that the drug court would send him back to jail and that he was afraid. He denied fleeing to Georgia to avoid apprehension and stated that he could have easily made a fake identification card for himself but did not do so. He explained that he had always planned to surrender to authorities and that he had wanted to establish that he "was out there doing good and not bad."

On cross-examination, the Defendant testified that he had been released from jail for about one month when he was sanctioned for communicating with his co-defendant. He was sent to jail for five months and missed curfew within two days of his release. He stated that he panicked because he thought that the drug court would not believe that he wished to participate in the program. He also stated that prior to his arrest, he had been spending the summer with his daughter and that he planned to turn himself in to the police once his daughter was back in school. The Defendant acknowledged that he had the opportunity to contact drug personnel after he absconded but failed to do so.

The drug court entered an order making extensive findings and removing the Defendant from the drug court program. The drug court reviewed the Defendant's history of non-compliance with the conditions of the program. The drug court noted that upon the Defendant's return to the program following his initial sanction for contacting his co-defendant in violation of the rules, the Defendant immediately violated the rules

with respect to curfew.  The drug court found that rather than discuss "these minor issues" with the court, the Defendant chose to abscond from the program for seven months until he was recaptured by law enforcement.  The drug court found that the Defendant's actions demonstrated "an unwillingness to participate in a treatment program" and that he failed to reflect "a sincere desire to actually and fully participate in the program on the program's terms—rather than on his own terms and on his own timeline."  The drug court concluded that the basis for removal had been established by a preponderance of the evidence.

The drug court found that retaining the Defendant in the program would be detrimental to the program and would send a message to present and future participants that the drug court would "tolerate those who purposefully abscond and refuse to engage with the rehabilitative aspects of the program itself" and that the drug court "is not especially serious in its mission to help bring about changes in addiction-driven criminal behavior."  The drug court found by a preponderance of the evidence that the Defendant consistently failed to comply with the rules and conditions of the program and that the program was not effective for the Defendant.  The drug court concluded that "removal from the program is the only viable alternative to remedy those issues and that other lesser remedies would not be effective."

The drug court ordered the Defendant removed from the drug court program and rescinded his furlough.  The drug court transferred the Defendant's case to the trial court in order for the Defendant "to show cause why he should not serve his sentences, as originally agreed to do on August 1, 2018, as a consequence of his plea agreement and agreed revocation of probation."  The drug court noted that although it was unclear whether due process principles required such a hearing, the termination procedures of the drug court program offered a former participant an opportunity for such a hearing in the trial court.  The drug court explained that such proceedings, in which a defendant would be represented by counsel, were requests to modify the judgment pursuant to Tennessee Rule of Criminal Procedure 35 and offered a defendant the opportunity to establish that the previously imposed sentences were no longer in the interests of justice due to the defendant's conduct in the drug court program.[1]

---

[1] We note that the Defendant filed a pro se motion pursuant to Tennessee Rule of Criminal Procedure 35 following the entry of his guilty plea and furlough to the drug court.  We question the necessity of the local procedure requiring a defendant to file a Rule 35 motion upon his or her entry in the drug court program and then holding the motion in abeyance while the defendant is participating in the drug court program and whether such a hearing set forth by local procedure following a defendant's removal from drug court fits within the confines of Rule 35.  *See State v. Christopher Allen Smith*, No. E2019-01345-CCA-R3-CD, 2020 WL 1887836, at *4 (Tenn. Crim. App. Apr. 15, 2020) (providing that "[w]hen a defendant has entered a plea agreement with a specific, negotiated sentence, that sentence may only be modified pursuant to Rule 35(b) where unforeseen, post-sentencing developments would permit

The trial court subsequently held a hearing during which the defense presented the testimony of Mr. Monty Reeves, a peer recovery specialist who owned two sober living homes. Mr. Reeves testified that the residents of the sober living homes must be sober prior to entry, cannot have prior convictions of violent or sexual-related offenses, cannot use drugs, must attend three weekly faith-based meetings and a twelve-step program, must adhere to a curfew, and must maintain employment. Mr. Reeves stated that at the time of the hearing, he had two beds available in one of his facilities.

The Defendant testified that he was willing to participate in Mr. Reeves's program and that he believed the program would be more effective for him than the drug court program. The Defendant stated that he also had been accepted into Life Changers Outreach, a Christian-based program. He said that the program needed help constructing buildings and that he had fifteen years of experience in construction.

On cross-examination, the Defendant testified that he first violated the conditions of the drug court program twenty-six days after entering the program by contacting his co-defendant. The Defendant denied that he was prohibited from contacting his co-defendant as a condition of the program and maintained that he understood he was not allowed to have a relationship with her. The Defendant denied having a relationship with his co-defendant and explained that they were only communicating via Facebook. He stated that following his release from jail due to the sanction, he was only fifteen minutes late for curfew and became afraid when drug court personnel told him that he would be required to address the drug court as a result. He acknowledged that he did not tell drug court personnel that he was going to Georgia and that he did not attempt to contact them during the seven months that he was in Georgia. He maintained that he intended to return following his daughter's summer break. On redirect examination, the Defendant testified that he went to Georgia to visit his teenage daughter, whom he had not seen in three years, and that he believed he would not see her for eight more years once he turned himself in to the police.

The trial court found by a preponderance of the evidence that the Defendant had violated the conditions of the drug court program. The trial court noted that the Defendant had been afforded multiple opportunities to participate in the program but continued to violate the rules and conditions. The trial court found no extraordinary circumstances demonstrating that removal from the drug court program and incarceration were not appropriate. The trial court ordered the Defendant's sentences into execution. The trial court subsequently entered an order revoking the Defendant's probation and

---

modification of a sentence in the interest of justice") (quotation omitted). However, we need not address this issue because the Defendant does not challenge the denial of his Rule 35 motion on appeal.

requiring him to serve his sentences in confinement.  The Defendant filed a timely notice of appeal.

## ANALYSIS

On appeal, the Defendant contends that the drug court erred in removing him from the drug court program and that the trial court erred in affirming the removal and ordering his sentences into execution.  He argues that his initial violations were relatively minor and that his absconding to Georgia did not justify his removal from the program under the circumstances.  The Defendant also argues that the record does not support the drug court's findings that he was unwilling to work with the court and that removal from the program was the only viable option.

This court has addressed the propriety of a trial court's lifting a stay of a sentence following the defendant's removal from a drug court program under the standards set forth for the revocation of probation or a suspended sentence. *See State v. Tonya Renee Mitchell*, No. M2009-00902-CCA-R3-CD, 2009 WL 5125115, at *2-3 (Tenn. Crim. App. Dec. 21, 2009).  A trial court may revoke a sentence of probation or a suspended sentence upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release.  T.C.A. § 40-35-311(e).  An abuse of discretion in revoking a defendant's probation occurs only where there is "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).  In exercising its authority, a trial court has no obligation to provide a defendant already on probation "'a second grant of probation or another form of alternative sentencing.'"  *State v. Tracy Arnold*, No. W2018-00307-CCA-R3-CD, 2018 WL 6266279, at *1 (Tenn. Crim. App. Nov. 30, 2018), (quoting *State v. Jeffrey A. Warfield*, 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)).

During the hearing before the drug court, the Defendant admitted to violating the rules and conditions of the program as alleged in the notice of removal.  The record reflects that shortly after he entered the program, he violated the rules by contacting his co-defendant, another member of the program, and he was incarcerated for five months as a result.  Despite the fact that the Defendant had been previously sanctioned, he continued to violate the rules and conditions of the program.  Within one to two days of his release, the Defendant missed curfew at the sober living facility where he was housed and did not return to the facility.  Once he learned that he would be required to go before the drug court as a result of his curfew violation, he fled to Georgia, where he remained for seven months until he was arrested and returned to Tennessee.  The Defendant admitted to using drugs during a portion of the time period during which he was in Georgia.  Given the Defendant's history of noncompliance, we conclude that the drug

court did not abuse its discretion in removing the Defendant from the drug court program and that the trial court did not abuse its discretion in affirming the removal and ordering the Defendant's sentences into execution.

The Defendant asserts that the procedures employed by the drug court in removing him from the program violated his due process rights because he "had a right to be heard before any sort of determination was made in his case." However, the Defendant has waived this issue on appeal by failing to raise any claim of due process violations in the courts below. *See* Tenn. R. App. P. 36(a). Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE